THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MIRIAM FULTZ, ET AL | : | 20-cv-2107 |
| Plaintiffs | : | |
| | : | |
| v. | : | Judge Jones |
| | : | |
| AMERICAN FEDERATION OF | : | |
| STATE, COUNTY AND MUNICIPAL | : | |
| EMPLOYEES, COUNCIL13, ET AL | : | |
| Defendants | : | |

# **MEMORANDUM AND ORDER**

## **July 29, 2021**

Presently pending before the Court is the Motion to Dismiss, ("the Motion"), filed by Defendant American Federation of State, County, and Municipal Employees, Council 13, ("the Union"). (Doc. 24).[1] The instant claims arose when Plaintiffs, all public employees of the Commonwealth of Pennsylvania, resigned their memberships in the Union ("the Union"). (Doc. 18 at ¶¶ 50-51). While, Plaintiffs allege, the Union does "not consider Plaintiffs [. . .] to be members of Council 13" at present, it has nevertheless continued to deduct union membership dues from each Plaintiff's paycheck. (*Id.* at ¶¶ 53-54). Plaintiffs now aver that this conduct is in violation of the Supreme Court's recent holding that unions cannot

---

[1] The instant motion closely mirrors another filed by Defendants Thomas W. Wolf, Michael Newsom, and Brian T. Lyman (collectively, "the Commonwealth Defendants"). (Doc. 22). As such, we borrow heavily from our opinion on that motion dated July 21, 2021, thoroughly considering all aspects of the Union's arguments herein. (*See* Doc. 37).

1

compel non-member public employees to pay dues or fees to a union as a condition of employment. (*Id.* ¶ 2 (citing *Janus v. AFSCME, Council 31*, 138 S. Ct. 2448, 2486 (2018))). The Union disagrees, arguing that *Janus* does not apply and asks us to dismiss Plaintiffs' Complaint in its entirety. (Doc. 24 at ¶ 6). For the reasons that follow, we will grant the Motion.

I. **FACTUAL BACKGROUND**

We take the following from Plaintiffs' Amended Complaint and assume its veracity, as we must.

a. *The Parties*

Plaintiffs Miriam Fultz, Darleen Dalto, Lucinda Radaker, Lacey Bainbridge, Carol Shaner, Jason Kohute, Kurtis Coates, Lisa Southers, Brittany Zappasodi, Scott Carter, Debra Kerstetter, Ashley Cluck, Blaine Chapman, and Barbara Richter are all current "public employe[es]" and "Commonwealth employe[es]" as those terms are defined by 43 P.S. §1101.301(2) and 43 P.S. §1101.301(15). (Doc. 18 at ¶¶ 9-22). Each Plaintiff was, at some point, a dues-paying member of the Union, but each resigned their respective membership between May 8, 2020 and December 23, 2020. (*Id.*). Of note, eight Plaintiffs—Miriam Fultz, Darleen Dalto, Lacey Bainbridge, Scott Carter, Debra Kerstetter, Ashley Cluck, Blaine Chapman, and Barbara Richter—joined the Union prior to the *Janus* decision. (*Id.* at ¶¶ 9-10, 12, 18-22). Six Plaintiffs—Lucinda Radaker, Carol Shaner, Jason Kohute, Kurtis

Coates, Lisa Southers, and Brittany Zappasodi—joined the Union after the *Janus* decision. (*Id.* at ¶¶ 11, 13-17).

The Union is an "Employe organization" and a "Representative," as those terms are defined by 43 P.S. §1101.301(3) and 43 P.S. § 1101.301(4). (*Id.* at ¶ 23). "Pursuant to collective bargaining agreements, Council 13 represents certain employees of the Commonwealth of Pennsylvania, including Plaintiffs and proposed class members, exclusively for purposes of collective bargaining with the Commonwealth." (*Id.*). The Commonwealth is a "Public employer" within the meaning of 43 P.S. §1101.30(1) and, "[t]hrough its officers and agents [. . .] negotiated for and entered into the collective bargaining agreement with [the Union] that governs Plaintiffs' and proposed class members' terms and conditions of employment." (*Id.* at ¶ 24).

### b. Statutory Framework

The Public Employe [*sic*] Relations Act, ("PERA"), provides that:

> It shall be lawful for public employes [*sic*] to organize, form, join or assist in employe organizations or to engage in lawful concerted activities for the purpose of collective bargaining or other mutual aid and protection or to bargain collectively through representatives of their own free choice *and such employes shall also have the right to refrain from any or all such activities, except as may be required pursuant to a maintenance of membership provision of a collective bargaining agreement.*

43 Pa. Cons. Stat. § 1101.401 (emphasis added). Specifically, PERA "authorizes public employers and employee organizations and/or representatives to engage in

3

collective bargaining relevant to membership dues deductions." (*Id*. at ¶ 47 (citing 43 P.S. §1101.705)). Pursuant to PERA, the Union entered into collective bargaining agreements, ("the CBA"), with the Commonwealth that "have controlled the terms and conditions of Plaintiffs' [. . .] employment at all relevant times hereto." (*Id.* at ¶¶ 44-45).

PERA defines "membership dues deduction" as "the practice of a public employer to deduct from the wages of a public employe [*sic*], with his written consent, an amount for the payment of his membership dues in an employe [*sic*] organization, which deduction is transmitted by the public employer to the employe [*sic*] organization." (*Id.* at ¶ 46 (quoting 43 P.S. § 1101.301(11))). Notably, pursuant to the current CBA, any such authorizations "shall remain in effect until expressly revoked in writing by the employee in accordance with the terms of the [initial] authorization." (Doc. 18-1 at 7).

  c. ***Provisions of the Union Agreement***

As permitted by PERA, Article 4 of the CBA, entitled "Dues Deductions," requires the Commonwealth, as an employer, "to deduct dues from the wages of an employee for Council 13, subject to the terms and conditions of the CBA." (*Id.* at ¶

48). Each Plaintiff's Council 13 Membership Card contains the terms of those voluntary dues deduction authorizations.[2]

Those Cards serve as each employee's application for membership in the Union and officially authorizes the Commonwealth to make voluntary dues deductions from their paychecks. (Docs. 24-3—24-16). Specifically, Plaintiffs, by signing their respective Membership Cards, agreed to: "voluntarily authorize and direct my Employer to deduct from my pay each pay period, regardless of whether I am or remain a member of the Union, the amount of dues certified by the Union." (*Id.*). Furthermore, the Cards acknowledged that each Plaintiff agreed that:

> This voluntary authorization and assignment shall be irrevocable, regardless of whether I am or remain a member of the Union, for a period of one year from the date of execution of this authorization or until the termination date of the collective bargaining agreement (if there is one) between my Employer and the Union, whichever occurs sooner, and for the years to come, unless I give my Employer and the Union written notice of revocation during the fifteen (15) days before the annual anniversary date of this authorization or, for public sector contracts, during the fifteen (15) days before the date of termination of the appropriate collective bargaining agreement between the Employer and the Union, whichever occurs sooner.

---

[2] Plaintiffs have referred to provisions of the Union membership card in their Amended Complaint. *See, e.g.,* Doc. 18 at ¶¶ 55-56. As such, we fully consider the terms of those Union membership cards, even though those provisions may not be explicitly cited by the operative pleading. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint [and] matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case").

(*Id*.). In other words, while Plaintiffs are free to resign their Union memberships at any time, they agreed to be financially responsible for Union membership dues for a period of one year from the date of signing their Cards. Plaintiffs may relieve themselves of their dues deductions obligations *only* by notifying the Union and the Commonwealth of their desire to do so, in writing, during the fifteen days prior to the one-year anniversary of their initial Card signing.

### d.  *Plaintiff's Alleged Union Resignations*

Each named Plaintiff resigned their respective Union membership between May 8, 2020 and December 23, 2020. (Doc. 18 at ¶¶ 9-22). They did so by providing notice to both the Union and Commonwealth. (*Id.* at ¶ 52). Plaintiffs aver that Defendants "do not consider Plaintiffs and proposed class members to be members" of the Union at this time. (*Id.* at ¶ 53). Nevertheless, Plaintiffs maintain, Defendants "refused to stop deducting dues from Plaintiffs' and proposed class members' wages for Council 13 as of the date of [each] membership resignation" from the Union. (*Id.* at ¶ 54). Instead, Plaintiffs claim, they have been informed that "they must continue dues deductions to and financial support of Council 13 indefinitely, at least until a purported annual 15-day escape window." (*Id.* at 55). As such, Plaintiffs will be required to "re-notify" both the Union and the Commonwealth "of their desire to end financial support of Council 13 within the

purported annual 15-day escape window in order to have the Commonwealth cease deducting financial support for Council 13 [from Plaintiffs' wages]." (*Id.* at ¶ 56).

## II.   PROCEDURAL HISTORY

Plaintiffs commenced this action on November 12, 2020. (Doc. 1). Upon request of the parties, we stayed proceedings in this case on January 12, 2021 pending the Third Circuit's resolution of *Smith v. New Jersey Education Association* and *Fisher v. Governor of New Jersey*. (Doc. 13). After the Third Circuit issued a non-precedential combined opinion in these matters, the parties filed a joint status report indicating that Plaintiffs wished to file an amended complaint reflecting the Third Circuit's findings. (Doc. 16). *See also Fischer v. Governor of New Jersey*, 842 F. App'x 741, 744 (3d Cir. 2021). We granted Plaintiffs' request, and an Amended Complaint was filed on March 1, 2021. (Docs. 17; 18). Plaintiffs' new complaint alleged the following: violation of First Amendment rights (Count I) and violation of procedural due process (Count II).

The Union filed a motion to dismiss all counts on April 5, 2021. (Doc. 24). They filed a brief in support simultaneously. (Doc. 25). Plaintiffs filed a brief in opposition on May 3, 2021. (Doc. 32). The Union replied on May 17, 2021. (Doc. 35). The matter is thus ripe for review.

### III. STANDARD OF REVIEW

In considering a motion to dismiss pursuant to Rule 12(b)(6), courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  In resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally should consider only the allegations in the complaint, as well as "documents that are attached to or submitted with the complaint, . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirement of Rule 8(a). Rule 8(a)(2) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint attacked by Rule 12(b)(6) motion to dismiss need not contain detailed factual allegations, it must contain "sufficient factual matter, accepted as true, to 'state a claim to relief

that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a civil plaintiff must allege facts that "raise a right to relief above the speculative level…." *Victaulic Co. v. Tieman*, 499 F.3d 227, 235 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). Accordingly, to satisfy the plausibility standard, the complaint must indicate that defendant's liability is more than "a sheer possibility." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Under the two-pronged approach articulated in *Twombly* and later formalized in *Iqbal*, a district court must first identify all factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Twombly*, 550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded for purposes of resolving a 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 679. Next, the district court must identify "the 'nub' of the … complaint – the well-pleaded, nonconclusory factual allegation[s]." *Id.* Taking these allegations as true, the district judge must then determine whether the complaint states a plausible claim for relief. *See id.*

However, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the

9

merits." *Phillips,* 515 F.3d at 231 (citing *Twombly*, 550 U.S. at 556-57). Rule 8 "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 234.

## IV. DISCUSSION

The Union makes four arguments in favor of dismissal: (1) enforcing a contractual commitment to pay union dues does not violate the Constitution; (2) Plaintiffs have failed to allege the deprivation of a sufficient liberty interest protected by the Fourteenth Amendment; (3) the process by which Plaintiffs were assessed union dues were not defective; and (4) Plaintiffs have failed to allege that the Union was acting under color of state law. (Doc. 25). In response, Plaintiffs alleged that *Janus* protects their right to avoid paying monies to the Union, and, even if it does not, the Membership Cards by which they joined the Union constitute unenforceable contracts. (*See* Doc. 32). Furthermore, Plaintiffs allege that they were not provided "readily ascertainable" procedures by which to cease payments to the Union in violation of their due process rights. (*Id.*). We begin by considering the applicability of *Janus* to the present set of facts.

### a. Applicability of Janus

In 2018, the Supreme Court held that "[n]either an agency fee nor any other payment to the union may be deducted from a nonmember's wages, nor may any

other attempt be made to collect such a payment, *unless the employee affirmatively consents to pay*. By agreeing to pay, nonmembers are waiving their First Amendment rights, and such a waiver cannot be presumed." *Janus v. Am. Fed'n of State, Cty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2486, 201 L. Ed. 2d 924 (2018).

Here, Plaintiffs argue that *Janus* applies to their own plight as nonmembers of the Union who are "forced to pay Council 13 nonmember dues." (Doc. 32 at 8-9). In support thereof, they note that the Membership Card "requires a potential member to 'voluntarily authorize and direct [their] Employer to deduct from [their] pay each pay period, regardless of whether [they are] or remain a member of the Union, the amount of dues certified by the Union . . . .' Therefore, Council 13 asked Plaintiffs to agree to pay money to the union as nonmembers." (*Id.* at 10-11). This, they argue, is in direct contravention of *Janus*, which prohibits compulsory union agency fees. (*Id.* (citing 138 S. Ct. at 2486)).

The Union disagrees, maintaining that *Janus* is not applicable to the instant case. (Doc. 25 at 12-13). In support thereof, they note that "Plaintiffs chose to join the union and pay dues pursuant to the terms of a written membership agreement in exchange for receiving membership rights and benefits," which "speak[s] to a contractual obligation, not a First Amendment violation." (*Id.* at 17-18) (internal citations omitted).

In sum, the Union maintains that *Janus* does not apply when an employee has voluntarily signed a contract to join a Union, noting that "*Janus* does not abrogate or supersede Plaintiffs' contractual obligations, which arise out of longstanding, common-law principles of general applicability." (Doc. 25 at 13) (citing *Fischer v. Governor of New Jersey*, 842 F. App'x 741, 744 (3d Cir. 2021).

This argument has recently received approval from the Third Circuit. In *Fischer v. Governor of New Jersey*, members of a New Jersey teacher's union argued that the waiting periods set forth in state statues and in their union membership agreements were unconstitutional under *Janus*, as they allowed Plaintiff's to disassociate from the union, but still required payment of dues as non-members for a set period of time. *Fischer*, 842 F. App'x at 744. As the Third Circuit noted, "[c]hanges in decisional law, even constitutional law, do not relieve parties from their pre-existing contractual obligations." *Fischer*, 842 F. App'x at 752 (internal citations omitted). "Put succinctly, 'a party cannot avoid its independent contractual obligations simply because a change in the law confers upon it a benefit' after the agreement is signed." *Id.* (citing *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 596 (3d. Cir. 2010)). Rather,

> [b]y binding oneself [to an agreement,] one assumes the risk of future changes in circumstances in light of which one's bargain may prove to have been a bad one. That is the risk inherent in all contracts; they limit the parties' ability to take advantage of what may happen over the period in which the contract is in effect.

12

*Id.* at 752 (citing *McKeever v. Warden SCI-Graterford*, 486 F.3d 81, 89 (3d. Cir. 2007) (quoting *United States v. Bownes*, 405 F.3d 634, 636 (7th Cir. 2005)). Even in the First Amendment context, the common law of contracts applies as a "law of general applicability." *Id*. at 753. Indeed, this opinion aligns with a "swelling chorus of courts" that has recognized that "'*Janus* does not extend a First Amendment right to avoid paying union dues' when those duties arise out of a contractual commitment that was signed before *Janus* was decided." *Id.* (citing *Belgau v. Inslee*, 975 F.3d 940, 944–45 (9th Cir. 2020) (collecting cases)).

We consequently find that Plaintiffs may not avoid their contractual obligations, for which they received valuable consideration, based upon subsequent changes in contractual law.³ *Janus* does not provide a basis for challenging their

---

³ True, several Plaintiffs joined the Union *after Janus* was decided. (Doc. 18 at ¶¶ 13-15; 17). Plaintiffs argue that for these Plaintiffs "at the time of signing it was already established that a constitutional waiver was required to authorize nonmember deductions" and so asks us not to dismiss Plaintiffs' "clearly established" right to action. (Doc. 32 at 15-16). But Plaintiffs point to no case law indicating that *Janus* has imposed an affirmative obligation upon employers to inform employees of the *Janus* decision—indeed, *Janus* only explicitly requires that "the employee affirmatively consents to pay" any union fees. *Janus*, 138 S. Ct. at 2486. On this front, *Janus* merely indicates that such a "waiver must be freely given and shown by 'clear and compelling' evidence. *Id*. We note that the language in the Membership Cards indicates that authorization of dues deductions is "voluntary" and shall occur "regardless of whether [Plaintiffs are] or remain [members] of the union for a period of one year from the date of execution of this authorization [. . .] unless [Plaintiffs] give [. . .] the Union written notice of revocation during the fifteen (15) days before the annual anniversary date of this authorization." (Doc. 24-4). Furthermore, Plaintiffs acknowledged that they "understand that [union dues deduction authorization] is not required as a condition of membership in any organization, or as a condition of continued employment, and is free of reprisal." (*Id*.). We believe that the execution of such Membership Cards, which clearly indicate that Plaintiffs *are not required* to join the Union as a condition of employment, and promise that there will be no reprisals for refusing dues deductions, constitutes such affirmative consent by clear and convincing evidence. Consequently, we find, absent further guidance from the Supreme Court or the Third Circuit, that

13

union membership agreements, nor the dues paid pursuant to that agreement. We next consider whether Plaintiffs have stated a claim under traditional contract law.

### b. *Enforceability of Union Membership Contracts*

Even assuming the inapplicability of *Janus*, Plaintiffs argue that dismissal is still not appropriate because we cannot yet determine whether the Membership Cards constitute enforceable contracts. (Doc. 32 at 12). We construe three arguments in favor of this proposition: [4] (1) "valuable consideration may not be present in the purported membership card contracts" because "most" Plaintiffs were already members of the Union before they signed their membership cards; (2) the membership cards lack "plain terms" that are central to the contract, such as an ambiguity concerning the "annual anniversary date" of each Membership Card; and (3) the Union "could be found to have materially breached the contract by failing to perform." (Doc. 32 at 13-15).

To evaluate these arguments, we look to Plaintiffs' Amended Complaint, as we must. While Plaintiffs ground these arguments in contract law, they are meant to illustrate that the Union is not entitled to dismissal of Plaintiffs' §1983 claim

---

the language of the Membership Cards constitutes "clear and convincing" evidence of an effective waiver, as is required by *Janus*.

[4]    In addition, Plaintiffs argue that *Fischer* does not mandate dismissal as it only addresses contracts signed before the *Janus* decision. As we previously discussed, we find that Plaintiffs voluntarily contracted to pay Union dues, and Plaintiffs have presented no case law which indicates that such contractual obligations can be thrown over.

14

because the contracts may be unenforceable and, consequently, may not insulate their allegedly unconstitutional dues deductions by sufficient waiver of First Amendment rights. But we see no factual allegations whatsoever that would support these contractually based arguments.

In their Amended Complaint, Plaintiffs do not allege that their execution of the Membership Cards was not supported by adequate consideration.[5] They also do not allege that the term "annual anniversary date" is ambiguous. Instead, Plaintiffs focus exclusively on the alleged unconstitutionality of these actions. While these two concepts are admittedly connected in this case, we cannot conjure allegations of an unenforceable contract from thin air to support Plaintiffs' §1983 claims. Plaintiffs raise these arguments for the first time in their opposition brief, and it thus not appropriate for us to consider any new factual allegations now.

Only their allegation of a material contract breach finds root in Plaintiffs' Amended Complaint. They alleged that dues deductions have been deducted after their resignation from the Union (in line with the requirement to pay dues until the

---

[5] We cannot *imply* that Plaintiffs have alleged a lack of consideration based upon their argument that "most" Plaintiffs were already Union members when they signed their Membership Cards—we can take as true *only* that which is properly alleged in the complaint. (Doc. 32 at 13). For example, Plaintiffs allege that Miriam Fultz resigned her Union membership "on or about June 29, 2020." (Doc. 18 at ¶ 9). But we see no allegation as to when she joined the Union or when she signed her Membership Card, should those be two separate dates. To be sure, we can consider her Membership Card itself to determine the date of execution, but we have no allegation whatsoever that Plaintiff Fultz was already a member of the Union before that date. The same can be said for the allegations of other named Plaintiffs.

15-day escape window), but that "they are not entitled to union member rights and benefits as of the date of their resignation." (Doc. 18 at ¶ 56-57). They argue that being forced to pay dues without receiving the rights and benefits of union membership constitutes "altering the terms of the contract" and "could be found" to be a material breach." (Doc. 32 at 15). But this argument still fails to state a claim for relief for two reasons. First, Plaintiffs do not allege that the failure to provide benefits while still collecting dues *actually violated the membership contracts*. Instead, we fail to see an alleged connection between these facts and *any* of Plaintiffs' legal claims. We cannot write into existence an allegation that the Union's actions violate the bargained-for contract, and we will not do so now.

Second, the explicit language of the Membership Cards contradicts Plaintiffs' argument. We are only required to take as true those allegations which are plausible on their face. These are not. The Membership Cards explicitly state that the dues deduction authorization is *completely voluntary*, but, once agreed to, "shall be irrevocable, *regardless of whether [Plaintiff is] or remain[s] a member of the Union*, for a period of one year from the date of [. . .] authorization." (Doc. 24-4). This language, on its face, indicates that Plaintiffs may cut all ties to the Union and its membership, but will still be required to pay the authorized dues for a period of one year from the date of their execution of the Membership Cards.

Plaintiff's novel argument that such action constitutes a material breach is thus a nonsensical one.

Consequently, we find that Plaintiffs have failed to state a claim for which relief may be granted grounded in an allegedly unenforceable contract. And because Plaintiffs have failed to allege that the Membership Cards are not enforceable, we will hold them to the terms to which they duly agreed.

### c. *Procedural Due Process*

Finally, Plaintiffs argue that they "have alleged due process violations both in the ways their resignations were handled, and in their lack of options for ceasing the forced financial support" of the Union. (Doc. 32 at 16). We construe the statement as alleging due process violations both in the handling of Plaintiffs' dues deductions authorizations and in the Union's use of said dues for "'*any* purpose,' including ideological or political speech with which Plaintiffs may disagree." (Doc. 32 at 18).

To prove a violation of procedural due process rights, a plaintiff must show that "(1) [D]efendants deprived him of an individual liberty interest that is encompassed within the Fourteenth Amendment's protection, and (2) the procedures Defendants made available to him did not provide due process of law." *Steele v. Cicchi*, 855 F.3d 494, 507 (3d Cir. 2017) (citing *Hill v. Borough of Kutztown*, 455 F.3d 225, 233–34 (3d Cir. 2006)). As the Union concedes, the

"liberty interest" alleged in Plaintiffs' Amended Complaint is the right "not to subsidize the speech and activities of Council 13." (Doc. 25 at 19) (citing Doc. 18 at ¶¶ 89; 94-95). But they argue that this right is not protected by the Fourteenth Amendment "[b]ecause the union dues at issue in [Plaintiffs' procedural due process claim] were payments owed under a voluntary contract [and, consequently,] Plaintiffs have suffered no deprivation of an individual interest." (Doc. 25 at 20). We agree.

The Third Circuit has recently approved of such an argument, finding that "affirmative consent" to join a union "effectively waiv[es the] right not to support the Union." *Oliver v. Serv. Emps. Int'l Union Loc. 668*, 830 F. App'x 76, 79 n.3 (3d Cir. 2020). *See also Molina v. Pennsylvania Soc. Serv. Union, Serv. Emps. Int'l*, No. 1:19-CV-00019, 2020 WL 2306650, at *11 (M.D. Pa. May 8, 2020) ("[Plaintiffs] was not deprived of an individual liberty interest. His union dues were deducted from his paycheck to satisfy his contractual obligation to the union and did not violate his First Amendment rights."). We have similarly found that Plaintiffs' the Membership Cards do not run afoul of Plaintiff's First Amendment rights, and consequently cannot find that they have alleged a

sufficient liberty interest to support their procedural due process claim. We thus need not consider whether the procedures provided to Plaintiffs were adequate.[6]

## V. CONCLUSION

We recognize the great impact of *Janus* on labor relations in this county. To be sure, that case has drastically altered the ability of unions to collect contributions from public employees. But *Janus* does not stretch as far as Plaintiffs would have us believe, nor will we push its boundaries unnecessarily, especially in light of the Third Circuit's recent holding in *Fischer*.

Plaintiffs undoubtedly signed their Membership Cards, which clearly laid out the terms of their membership and their union dues responsibilities. Subsequent changes in law cannot forestall Plaintiffs' previous contractual obligations, nor do we see any indication in *Janus* or subsequent case law that a full explanation of the *voluntary* nature of Union membership and dues payment does not satisfy the First Amendment's protections. We cannot impose additional requirements upon the Union that are not supported in the law, and consequently do not find that *Janus*'s protections extend to our Plaintiffs.

---

[6] We note that this outcome differs significantly from the related opinion recently filed in this case. (*See* Doc. 37). In that opinion, the Defendants (all officials of the Commonwealth of Pennsylvania) did not contest that Plaintiffs had adequately articulated a sufficient liberty interest. (Doc. 23 at 18) (Commonwealth "set[ ] aside whether electing to contribute dues can be described as a deprivation" and instead focused upon whether Plaintiffs had adequately alleged that the process provided to them was deficient). Consequently, we did not previously consider whether Plaintiffs' alleged liberty interest could survive a Rule 12(b)(6) motion. We do so now for the first time and find that it cannot.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The Union's Motion to Dismiss, (Doc. 24), is **GRANTED.**

<u>s/John E. Jones III</u>
John E. Jones III, Chief Judge
United States District Court
Middle District of Pennsylvania
